FILED

2008 Jan 23 PM 12:54

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CANTON

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JOSEPH CHARLES PFAHLER and | ) | CASE NO. 06-62295 |
| JUANITA NMN PFAHLER, | ) | |
|     Debtors. | ) | ADV. NO. 07-6034 |
| | ) | |
| | ) | JUDGE RUSS KENDIG |
| UNITED STATES TRUSTEE, | ) | |
| REGION 9., | ) | |
|     Plaintiffs, | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH CHARLES PFAHLER and | ) | |
| JUANITA NMN PFAHLER, | | |
|     Defendants. | | |

    This adversary proceeding arises in the Chapter 7 proceeding of Joseph Charles Pfahler and Juanita Pfahler. The U.S. Trustee ("UST") for Region 9 filed this adversary complaint on February 22, 2007 seeking revocation of Debtors' discharge under 11 U.S.C. § 727(a)(2), (a)(4)(A), and (c), alleging that the Debtors transferred property prepetition with the intent to hinder, delay, or defraud creditors, and made a false oath or account of such transfers in a § 341 meeting to Trustee Josiah Mason. Defendants answered and denied the allegations. On September 11, 2007, UST moved to dismiss Juanita Pfahler as a co-defendant; the Court granted this motion on October 5, 2007, leaving Joseph Pfahler as the sole defendant. The Court held a trial in this proceeding on January 14, 2008. Amy Good represented the UST. William C. Fithian represented Defendant Joseph Pfahler.

    The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). In accordance with Federal Rule of Bankruptcy Procedure 7052, the court's findings of facts and conclusions of law are set forth in this opinion.

**FINDINGS OF FACT**

    Based on the record as constructed at trial, the Court finds the following facts to be established:

1. On November 13, 2006, Mr. Pfahler ("Defendant") and his spouse filed a Chapter 7 bankruptcy petition. Defendant and his spouse also signed the petition on November 13, 2006.
2. Defendant disclosed two transfers on Item #10a of his SOFA, both to Bob Berger, principal of Berger's Family Auto Sales, Inc., and both on October 27, 2006. The first transfer was a 1999 Oldsmobile Bravada, for which Defendant declared he received $1,500.00. The second was a 2005 Chevrolet Trailblazer, for which Defendant declared he received $13,600.00.
3. At some undetermined point within the two months prior to filing his bankruptcy petition, Defendant entered into a verbal agreement with Berger's Family Auto Sales, Inc. ("BFAS") for the sale of the two vehicles.
4. At the time, the Bravada was unencumbered. There was a lien on the Trailblazer in the amount of $13,349.33.
5. The verbal agreements provided that Defendant would give possession of the vehicles to BFAS, which would then sell them on its lot and then pay Defendant.
6. Bob Berger agreed to pay Defendant $4,000.00 for the Bravada upon its sale, regardless of the sale price.
7. Mr. Berger agreed to place the Trailblazer on the lot and split any profit from the sale 50-50 after first discharging the lien on the vehicle.
8. Defendant delivered possession of the vehicles to BFAS sometime in the two months prior to filing.
9. Defendant transferred title of the Bravada to BFAS on November 13 or 14, 2006, the day of or the day immediately following his petition filing date.
10. A third party bought the Bravada for $6,995 on November 13 or 14, 2006.
11. On November 14, 2006, BFAS paid Defendant $4,000.00 in the form of a check for the Bravada.
12. At some point during the two weeks prior to filing his petition, Defendant transferred title of the Trailblazer to BFAS, which then sold the Trailblazer, at some point prior to November 9, 2006, to a third party for $13,995.
13. On November 9, 2006, BFAS paid Defendant $296.38 in the form of a check for the Trailblazer after discharging the lien thereon.
14. On November 14, 2006, Defendant cashed both of the checks from BFAS.
15. On December 28, 2006, Chapter 7 Trustee Josiah Mason conducted a meeting of creditors pursuant to 11 U.S.C. § 341. Defendant testified under oath there that he had received $1,500 for the Bravada and used the money to pay living expenses. He also testified that he had attempted to sell the Bravada himself for $3,000.00.
16. At the same meeting, Defendant testified that BFAS purchased the Trailblazer for "what was against it," meaning the amount of the lien. However, he also testified at the same meeting that he sold it for $13,995, which was the correct sale price when BFAS sold it to a third party, but not the amount of the lien.
17. Defendant knew at the time he transferred the Bravada and Trailblazer that his bankruptcy estate would have an interest in the proceeds from the sale, and those proceeds would be subject to administration by the Chapter 7 Trustee.
18. Defendant knowingly and fraudulently understated the values received for the vehicles in his SOFA.

07-06034-rk    Doc 39    FILED 01/23/08    ENTERED 01/23/08 12:54:19    Page 2 of 6

19. Defendant knowingly and fraudulently understated the values received for the vehicles at the 341 meeting of creditors.
20. Defendant did not turn over or disclose to the Chapter 7 Trustee the proceeds he received from the sales of the vehicles.
21. With the proceeds from the vehicle sales, Defendant and his wife paid $2,265.39 to JoAnn Inscho; gave cash gifts totaling $1,200 to their children and grandchildren; paid real estate taxes of $574.12; and used the balance to pay for living expenses.
22. Upon investigation after the meeting of creditors, the Chapter 7 Trustee discovered that BFAS paid Defendant $4,000 for the Bravada and $296.38 for the Trailblazer.

## CONCLUSIONS OF LAW

The Court likewise finds the following conclusions of law to be established:

23. Under 11 U.S.C. § 541(a), the vehicles and/or proceeds from the sales thereof were or would have been property of the estate.
24. Under 11 U.S.C. § 101(13), Defendant is the debtor concerning which the main case under which this adversary proceeding arises has been commenced.
25. In violation of 11 U.S.C. § 727(a)(2), Defendant has, with the intent to defraud a creditor and an officer of the estate, transferred either property of the debtor within one year before the date of the filing of the petition, or property of the estate after commencement of the case.
26. At the § 341 meeting, in violation of 11 U.S.C. § 727(a)(4), Defendant knowingly and fraudulently made a false oath or account in or in connection with the case.
27. Under § 727(c)(1), the United States trustee may object to the granting of a discharge under § 727(a), and has properly done so in this case.
28. UST's objection to debtor's discharge is sustained.

## DISCUSSION

In this adversary proceeding, UST invokes its authority under Bankruptcy Code § 727(c)(1) to object a discharge that might otherwise be entered under § 727(a). UST bases its objection on the allegation that Defendant sold two vehicles on the eve of bankruptcy or immediately following the commencement of the case, and subsequently deliberately understated the amounts received both on paper and in oral testimony. UST contends that this violates the requirements of Code §§ 727(a)(2) and (a)(4).

UST is correct.

As a preliminary matter, the vehicles in question were in fact property of the estate. Property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). From the record as established at the hearing, due to some unresolved ambiguities in the testimony of Bob Berger, it is unclear whether Defendant had transferred title of the vehicles to BFAS in the period shortly before filing or the day afterward. It is equally irrelevant. If the sale had not yet been consummated at the time of filing, then the

vehicles were property of the estate. If the sale had been consummated, then the proceeds from the sales were property of the estate.

> A bankruptcy court is not to grant a discharge to a debtor who
>
>> with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2), (a)(2)(A)-(B). Two elements must be proven to warrant a denial of discharge under this provision: both the disposition of such property and, crucially, subjective intent on the part of the debtor to hinder, delay, or defraud a creditor or an officer of the estate in so doing. See In re Keeney, 227 F.3d 679, 683 (6th Cir. 2000). Defendant either transferred property of the debtor to BFAS on the eve of bankruptcy, or (if the sale had not yet been consummated) concealed property of the estate which was then transferred to BFAS the next day. The remaining issue is whether Defendant had the requisite actual subjective intent to defraud. Actual intent may be inferred from a debtor's actions and may be proven by circumstantial evidence. In re Dennis, 330 F.3d 696, 701-02 (5th Cir. 2003), Matter of Smiley, 864 F.2d 562, 566 (7th Cir. 1989). Debtor here had the actual intent to conceal the full amount of money received from the sales of the vehicles. The false $1,500 figure from the sale of the 1999 Bravada appears on the SOFA filed with the petition itself on the day before the checks for the vehicles were cashed. Defendant could have amended this at any time, but did not do so, and continued to maintain that he received $1,500 more than a month later, when, on December 28, 2006, he told the Chapter 7 Trustee at the meeting of creditors that he received $1,500 for the Bravada. The sustained deception is too much to overcome with an assertion of mere memory loss. Even if memory loss could account for forgetting the $4,000 figure, it could not account for the materialization of the $1,500 figure, the origin of which was completely unexplained at trial. In addition, the excuse is particularly weak here given that the filing of the petition and the cashing of the checks were only a day apart. The court therefore finds that the transfers were made with the subjectively fraudulent intent necessary to sustain an objection to discharge.

The same facts are independently a sufficient ground to deny Defendant's discharge under Code § 727(a)(4), which provides that a bankruptcy court shall not grant a discharge to a debtor who has "knowingly and fraudulently, in or in connection with the case (A) made a false oath or account." 11 U.S.C. § 727(a)(4), (a)(4)(A). An objector under this subsection bears the burden of proving five elements: "(1) the debtor made a statement while under oath, (2) the statement was false, (3) the statement related materially to the bankruptcy case, (4) the debtor knew the statement was false, and (5) the debtor made the statement with fraudulent intent." In re Hamo, 233 B.R. 718, 725 (6th Cir. BAP 1999). Statements in bankruptcy schedules and testimony at § 341 meetings of creditors are both under oath. Defendant made the same false statements in both, with the knowledge that they were false, and with the intent to defraud the Chapter 7 Trustee and his creditors, as established above.

4

Accordingly, UST's objection to discharge is sustained. An order of judgment effecting the same will be entered concurrently with this opinion.

/s/ Russ Kendig
---
RUSS KENDIG
U. S. BANKRUPTCY JUDGE

**Service List**:

Joseph Charles Pfahler
169 W Smiley Ave
Shelby, OH 44875

Josiah L Mason
153 W Main St
PO Box 345
Ashland, OH 44805-2219

William C Fithian, III
111 N Main St
Mansfield, OH 44902

Amy Good
Trial Attorney
U.S. Dept. of Justice
Office of the U.S. Trustee
201 Superior Ave. Suite 441
Cleveland, OH 44114